**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**NORTHERN DIVISION**

| | |
|---|---|
| **KRISTEN L. CLAY,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 1:07-cv-00029-PMW** |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

Before the court is Kristen L. Clay's ("Plaintiff") appeal of Michael J. Astrue's (the "Commissioner") final decision terminating Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see id*. §§ 1381-1383f.  After careful consideration of the written briefs and the complete record, the court has determined that oral argument would not be helpful or necessary in this case.

**RELEVANT BACKGROUND**

Plaintiff applied for DIB and SSI in March 1997, alleging disability as a result of post-traumatic stress disorder, depression, anxiety, suicidal ideation, asthma, agoraphobia, headaches, and fatigue.[1]  On September 27, 1999, the Commissioner determined that Plaintiff had met the

---

[1] *See* docket no. 9, Administrative Record ("Tr. ____"), 14, 221.

requirements of section 12.04 ("listing 12.04") of Appendix 1 of the relevant regulations ("listings").[2]  *See* 20 C.F.R. § 404, Subpart P, Appendix 1.

On July 8, 2003, after a continuing disability review, the Plaintiff was notified that her disability had ceased as of July 2003 and that her benefits would end in September 2003.[3] Plaintiff requested reconsideration of that decision and, as a result, a hearing was scheduled before a Disability Hearing Officer on November 24, 2003.[4]  On March 3, 2004, the Disability Hearing Officer affirmed the decision to terminate Plaintiff's benefits.[5]

Plaintiff then filed a timely request for a hearing[6] and, consequently, a hearing was held before an Administrative Law Judge (the "ALJ") on December 29, 2004.[7]  The ALJ issued a written decision on June 22, 2005, determining that there had been medical improvement in Plaintiff's condition as of July 2003 and that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work.[8]  The Appeals Council denied Plaintiff's request for review of that decision, making it the Commissioner's final decision in this case for

---

[2]  *See* Tr. 28, 568-77.

[3]  *See* Tr. 30-31.

[4]  *See* Tr. 70-75.

[5]  *See* Tr. 47-69.

[6]  *See* Tr. 43.

[7]  *See* Tr. 761-98.

[8]  *See* Tr. 14-25.

purposes of judicial review.[9]  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On March 6, 2007, Plaintiff filed her complaint in this case, which was originally assigned to Chief District Judge Tena Campbell.[10]  Thereafter, both parties consented to having a Magistrate Judge conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[11]  Accordingly, the case was reassigned to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.[12]

The Commissioner filed his answer to Plaintiff's complaint on May 23, 2007,[13] and the court received the Administrative Record that same day.[14]  Plaintiff filed her opening brief on November 9, 2007.[15]  The Commissioner filed his responsive brief on December 6, 2007.[16]  Plaintiff filed her reply brief on December 27, 2007.[17]

---

[9]  *See* Tr. 6-8.

[10]  *See* docket no. 3.

[11]  *See* docket no. 4.

[12]  *See id.*

[13]  *See* docket no. 7.

[14]  *See* docket no. 9.

[15]  *See* docket no. 11.

[16]  *See* docket no. 12.

[17]  *See* docket no. 13.

**STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits are denied.  If [the claimant] is not, the decision

4

>maker must proceed to step two: determining whether the claimant
>has a medically severe impairment or combination of
>impairments. . . . If the claimant is unable to show that his
>impairments would have more than a minimal effect on his ability
>to do basic work activities, he is not eligible for disability benefits.
>If, on the other hand, the claimant presents medical evidence and
>makes the *de minimis* showing of medical severity, the decision
>maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R.

§§ 404.1520(a)(4)(i)–(ii), 416.920(a)(4)(i)–(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed

impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the

impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to

benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751

(quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At

the fourth step, the claimant must show that the impairment prevents performance of his "past

relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to

perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the

claimant is not able to perform his previous work, he "has met his burden of proof, establishing a

prima facie case of disability." *Id.*

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.* At

this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

"whether the claimant has the [RFC] to perform other work in the national economy in view of

his age, education, and work experience." *Id.*; *see* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If it is determined that the claimant "can make an adjustment to other work,"

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled.  If, on the other hand, it is

determined that the claimant "cannot make an adjustment to other work," 20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## ANALYSIS

Plaintiff makes five arguments in support of her claim that the Commissioner's decision

should be reversed.  Plaintiff argues that the ALJ erred by (1) proceeding with the hearing

without ensuring that Plaintiff knowingly and intelligently waived her right to counsel; (2) failing

to adequately develop the record regarding Plaintiff's mental impairments; (3) improperly

evaluating Plaintiff's credibility; (4) improperly assessing Plaintiff's RFC; and (5) failing to

fulfill his obligation under Social Security Ruling ("SSR") 00-4p.  The court will address each

argument in turn.

### I.  Waiver of Right to Counsel

Plaintiff argues that the ALJ erred by proceeding with the hearing without obtaining a

knowing and intelligent waiver of Plaintiff's right to counsel.  Plaintiff asserts that her exchange

with the ALJ near the outset of the hearing was inadequate to constitute a valid waiver.  That

argument is without merit.  Plaintiff has failed to acknowledge binding Tenth Circuit precedent,

as well as other evidence in the record indicating that Plaintiff was adequately notified of her

right to counsel and executed a valid waiver of that right.

In *Carter v. Chater*, 73 F.3d 1019 (10th Cir. 1996), the claimant argued that the ALJ

failed to advise her adequately of her right to counsel.  *See id*. at 1021.  The court noted,

however, that the record indicated that the ALJ had advised the claimant of her right to counsel prior to the hearing and that she waived that right.  *See id*.  The court further noted that the notice of hearing, notice of denial, and notice of reconsideration all advised the claimant of her right to representation.  *See id*.  The court admitted that "[w]hile the customary and better practice would seem to be to place both the advisement and the waiver on the record during the hearing, neither the pertinent statute, *see* 42 U.S.C. 406(c), nor the regulations, *see* 20 C.F.R. § 404.1706, nor our previous cases require any more advisement than was given in this case."  *Carter*, 73 F.3d at 1021.

This case presents a nearly identical situation to the one presented in *Carter*.  In this case, the Commissioner advised Plaintiff of her right to counsel in the notice of disability cessation,[18] the notice denying her request for reconsideration,[19] a letter acknowledging the receipt of her request for a hearing,[20] and the notice of hearing.[21]  In several of those documents, the Commissioner further advised Plaintiff how an attorney or a representative could help her with her case; provided a list of organizations that could help her locate an attorney; advised her that some attorneys might be willing to represent her without charge unless her claim was allowed; provided her with the names of organizations that provided free legal services; and advised her that payment of attorney fees, if she was successful, would be based on twenty-five percent of her

---

[18] *See* Tr. 79-80.

[19] *See* Tr. 72-74.

[20] *See* Tr. 27.

[21] *See* Tr. 85-88.

past-due benefits.[22]  In addition, on the date of the hearing, Plaintiff signed and dated a form

entitled, "Right to Counsel," in which she indicated:  (1) she had received the letter

acknowledging the receipt of her request for a hearing that explained her right to counsel; (2) she

understood that she may have the right to be represented by an attorney free of charge from a

local legal aid society or through a local bar association and that payment of attorney fees, if she

was successful, would be based on twenty-five percent of her past-due benefits; (3) she was

unrepresented for purposes of the hearing; and (4) she was willing to proceed with her hearing

without a representative.[23]

Consistent with *Carter*, the court is satisfied that Plaintiff was adequately advised of her

right to counsel and that she knowingly and intelligently waived that right.  *See id*.  In addition,

and notwithstanding Plaintiff's arguments to the contrary, the ALJ was under no duty during the

hearing to further advise Plaintiff of her right to counsel or to obtain an additional waiver of that

right.  *See id*.  While his colloquy with Plaintiff near the outset of the hearing was not ideal, the

court concludes that it did not affect Plaintiff's valid waiver of her right to counsel.  *See id*.

Accordingly, the court concludes that the ALJ did not err by proceeding with the hearing.

## II.  Mental Impairments

Plaintiff contends that the ALJ failed to adequately develop the record regarding

Plaintiff's mental impairments.  More specifically, Plaintiff asserts that the ALJ failed to ask

---

[22]  *See* Tr. 27, 73.

[23]  *See* Tr. 95.

sufficient questions to determine the nature if Plaintiff's mental impairments.  The court

disagrees.

> It is beyond dispute that the burden to prove disability in a
> social security case is on the claimant.  However, unlike the typical
> judicial proceeding, a social security disability hearing is
> nonadversarial, with the ALJ responsible in every case to ensure
> that an adequate record is developed during the disability hearing
> consistent with the issues raised.

*Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quotations and citations omitted).

"The ALJ's duty to develop the record is heightened when a claimant is unrepresented.

However, a claimant's pro se status does not, in and of itself, mandate a reversal."  *Musgrave v.*

*Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted).

In this case, the ALJ had a great deal of record evidence before him concerning Plaintiff's

mental impairments.  In his decision, the specifically noted recent evaluations concerning

Plaintiff's mental impairments, which showed a marked improvement in Plaintiff's mental

condition.[24]  When the ALJ compared that evidence with the evidence of Plaintiff's mental state

when she was previously awarded benefits, he concluded that Plaintiff no longer met the

requirements of listing 12.04.[25]  Given that the more recent evidence was rather conclusive that

Plaintiff no longer met the requirements of listing 12.04, it is unclear to the court what the ALJ

was required to do to further develop the record in this case.  Plaintiff contends that the ALJ

could have asked her about the impact of her mental impairments on her daily routine and

---

[24]  *See* Tr. 17, 495-99, 505-15.

[25]  *See* Tr. 16-19.

9

activities and about any ongoing treatment and medication she was receiving for those impairments.  In light of the recent evaluations indicating a marked improvement in Plaintiff's mental state, and given that the ALJ found that Plaintiff's daily activities were not restricted,[26] the court concludes that asking such questions would not have provided any information that would have been relevant or useful to the ALJ's decision.  Notably, Plaintiff does not demonstrate how her answers to any of those questions could have affected the outcome of the ALJ's decision.

Further, as noted by the Commissioner, in Plaintiff's request for a hearing before the ALJ, she indicated that she disagreed with the determination concerning her benefits because she was "not able to work full time" and because she "lack[ed] the strength [and] energy to even fulfill" her part-time job.[27]  The court recognizes that the origin of this appeal was the cessation of Plaintiff's benefits that had been awarded because Plaintiff previously met the requirements of listing 12.04 (affective disorders).  However, it appears that Plaintiff did not assert before the ALJ that she was entitled to continuing benefits because of her mental impairments; instead, she asserted to the ALJ that she was entitled to continuing benefits based on her physical impairments.  Accordingly, while the issue of Plaintiff's mental impairments may have been before the ALJ, the more crucial issue was the state of Plaintiff's physical impairments.  The court's review of the hearing transcript reveals that the ALJ directed his questions appropriately

---

[26] *See* Tr. 21.

[27] Tr. 43.

toward Plaintiff's physical impairments, while still allowing her to provide some testimony about her mental impairments.[28]

As a final matter, and in light of the foregoing conclusion that the ALJ did not err in proceeding with the hearing, the court notes that there is no indication in the record evidence or in the hearing transcript that Plaintiff's alleged mental impairments in any way affected her ability to execute a knowing and intelligent waiver of her right to counsel.

For these reasons, the court concludes that the ALJ did not err in his development of the record concerning Plaintiff's mental impairments.

### III.  Credibility

Plaintiff claims that the ALJ improperly evaluated Plaintiff's credibility.  In general, "[c]redibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although credibility determinations "should be closely and affirmatively linked to substantial evidence," *id*. (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

A more specific framework of analysis applies to determining whether Plaintiff's subjective allegations of pain are credible.  *See Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  Under that framework, the court must consider "(1) whether [Plaintiff] established a pain-

---

[28]  *See* Tr. 785-86.

producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus'

between the proven impairment and [Plaintiff's] subjective allegations of pain; and (3) if so,

whether, considering all the evidence, both objective and subjective, [Plaintiff's] pain is in fact

disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quoting and citing

*Luna*, 834 F.2d at 163-64).

Even assuming that Plaintiff has established the first two elements of that analytical

framework, the court still must consider the third element. *See id*. Consideration of the

"subjective" evidence includes Plaintiff's own testimony and is "evaluated only on the basis of

credibility." *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

> When determining the credibility of pain testimony, the ALJ
> should consider such factors as the levels of medication and their
> effectiveness, the extensiveness of the attempts (medical or
> nonmedical) to obtain relief, the frequency of medical contacts, the
> nature of daily activities, subjective measures of credibility that are
> peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the
> consistency or compatibility of nonmedical testimony with
> objective medical evidence.

*Id*. (quotations and citations omitted); *see also* SSR 96-7p.

Plaintiff argues that the ALJ's entire analysis of Plaintiff's credibility is conclusory and

contained in one paragraph of the ALJ's decision. That argument is both misleading and without

merit. While the ALJ did insert his conclusion about Plaintiff's credibility at the beginning of

the section of the decision devoted to discussing credibility,[29] he followed that conclusion with over a page of supporting discussion and reasoning.[30]

In that discussion, the ALJ properly considered several of the above-referenced factors to support the conclusion that Plaintiff's "statements concerning her impairments and her ability to work are not entirely credible in light of [Plaintiff]'s own description of her activities and life style [sic], the degree of medical treatment required, and the reports of treating and examining practitioners."[31]  For example, the ALJ specifically noted Plaintiff's ability to care for her nephews; participation in a story-telling festival; stated plans to teach an acting class; part-time work as a teacher during her alleged period of disability; ability to attend to personal needs and household chores, such as cooking, laundry, shopping, and driving; failure to seek mental health counseling and lack of psychiatric hospitalizations after July 2003; and indication in May 2003 that she felt psychologically stable and was not taking any psychotropic medications.[32]  The ALJ also noted the partial relief for her knee and foot pain provided by orthotics and medication, the normal x-rays of Plaintiff's knee, the extent to which medication controlled her asthma in 2003, and the lack of evidence for any thought disorder or cognitive limitations.[33]

---

[29]  *See* Tr. 20.

[30]  *See* Tr. 20-21.

[31]  Tr. 20.

[32]  *See* Tr. 20-21.

[33]  *See* Tr. 21.

The court has determined that the ALJ relied upon proper factors in making his specific findings about Plaintiff's credibility.  *See Thompson*, 987 F.2d at 1489; SSR 96-7p.  In addition, the court has reviewed the relevant portions of the record cited by the ALJ in support of his credibility findings.[34]  After that review, the court has determined that the cited portions constitute substantial evidence in support of those findings and that those findings are closely and affirmatively linked to that substantial record evidence.  *See Kepler*, 68 F.3d at 391.  Accordingly, the court will not disturb the ALJ's conclusion about Plaintiff's credibility.

## IV.  RFC

Plaintiff argues that the ALJ failed to properly determine Plaintiff's RFC.  More specifically, Plaintiff asserts that the ALJ's RFC determination fails to comply with the narrative discussion requirement of SSR 96-8p.  *See* SSR 96-8p (providing, in relevant part, that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" and that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

 Plaintiff contends that the ALJ's RFC determination failed to comply with SSR 96-8p because it "appears as a conclusion . . . , with no reasoning and no citation to specific facts."[35]

---

[34]  *See* Tr. 20-21.

[35]  Docket no. 11.

Similar to Plaintiff's argument concerning the ALJ's credibility determination, this argument is both misleading and without merit.  Prior to the ALJ's conclusion about Plaintiff's RFC, he had engaged in over two pages of supporting discussion and reasoning.[36]  Further, the court's reading of that discussion demonstrates that the ALJ summarized the medical and nonmedical evidence and explained how any material inconsistencies or ambiguities in the evidence in the case record were resolved.  *See id*.  For example, the ALJ incorporated his credibility determination into her RFC assessment.[37]  As previously noted, that determination included a discussion about the nonmedical evidence that the ALJ considered in concluding that Plaintiff's testimony was not credible.  The ALJ also noted in numerous places how he resolved inconsistencies and ambiguities in the record evidence.[38]  For these reasons, the court concludes that the ALJ complied with SSR 96-8p in determining Plaintiff's RFC.

Plaintiff also argues that the ALJ's RFC assessment is not supported by substantial evidence.  Notably, however, Plaintiff has not attempted to demonstrate how the record evidence fails to support the ALJ's RFC assessment.  Instead, Plaintiff ignores the ALJ's discussion immediately preceding his RFC assessment and makes the conclusory assertion that the RFC is not supported by substantial evidence.[39]  As the court has previously established, Plaintiff's attempts to minimize the ALJ's discussion and reasoning in support of his RFC assessment are

---

[36]  *See* Tr. 20-21.

[37]  *See id*.

[38]  *See id*.

[39]  *See* docket no. 11.

15

not compelling.  Further, after reviewing that discussion and the record evidence, the court

concludes that the ALJ's RFC determination is supported by substantial evidence.  *See Lax*, 489

F.3d at 1084.

Based on the foregoing, the court concludes that the ALJ did not err with respect to his

assessment of Plaintiff's RFC.

### V.  SSR 00-4p

Pursuant to SSR 00-4p, before an ALJ relies upon a VE's testimony to support a

disability determination, he must identify and obtain a reasonable explanation for any conflicts

between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), as well as

explain in his decision how any such conflicts were resolved.  *See* SSR 00-4p; *see also Haddock*

*v. Apfel*, 196 F.3d 1084, 1089-92 (10th Cir. 1999).  SSR 00-4p provides that the ALJ has an

"affirmative responsibility" to ask the VE about any possible conflicts between the VE's

testimony and the DOT.  SSR 00-4p.  If a VE's testimony appears to conflict with the DOT, the

ALJ must then obtain a reasonable explanation for the apparent conflict.  *See id.*

Plaintiff argues that the ALJ erred by failing to satisfy his obligations under SSR 00-4p in

several ways.  The court will address those arguments in turn.

First, Plaintiff argues that two of the jobs the VE testified Plaintiff could perform have

requirements that conflict with the limitations contained in Plaintiff's RFC.  In Plaintiff's RFC

assessment, the ALJ determined that Plaintiff could not perform work that required constant

reaching, handling, and fingering.[40]  Plaintiff asserts that the jobs of Cutter and Paster, *see* DOT,

Occupation Title 249.587-014, and Addresser, *see* DOT, Occupation Title 209.587-010, conflict

with that limitation.  The Commissioner responds by saying that argument is without merit

because neither of those jobs requires constant reaching, handling, or fingering.  Notably,

Plaintiff appears to abandon her argument on this point in her reply brief.  Nonetheless, the court

agrees with the Commissioner.

In the DOT, the job of Cutter and Paster is indicated as requiring reaching and handling

"frequently" (i.e., exists from one-third to two-thirds of the time) and requiring fingering

"occasionally" (i.e., exists up to one-third of the time).  *See* DOT, Occupation Title 249.587-014.

In addition, the DOT indicates that the job of Addresser requires reaching, handling, and

fingering "frequently" (i.e., exists from one-third to two-thirds of the time).  *See* DOT,

Occupation Title 209.587-010.  Because this information indicates that there is no conflict

between the DOT and the VE's testimony concerning the above-referenced two jobs, the court

concludes that Plaintiff's argument fails.

Second, Plaintiff argues that the VE erred by stating in his hypothetical to the VE that

"[t]he person would not need a sit/stand option."[41]  Plaintiff asserts that this is in direct conflict

with the ALJ's RFC assessment, which provides that Plaintiff cannot stand or walk more than

fifteen minutes at a time or for a total of more than two hours in an eight-hour workday and

---

[40]  *See* Tr. 22.

[41]  Tr. 793.

cannot sit for more than forty-five minutes at a time or for a total of more than six hours in an

eight-hour workday.[42]  Accordingly, Plaintiff asserts that the ALJ should have acknowledged

Plaintiff's need for a sit/stand option based on the RFC and elicited a reasonable explanation

from the VE concerning any possible conflicts that option might create with the DOT.  In

response, the Commissioner notes that Plaintiff has failed to acknowledge the surrounding

language in the transcript.  The court agrees.

Near the beginning of his examination of the VE, the ALJ was attempting to explain a

hypothetical to the VE when the following exchange occurred:

| | |
|---|---|
| [ALJ to VE]: | She could be on her feet standing or walking for 15 minutes at a time for about two hours in a day. |
| [Plaintiff]: | Oh.  That's news to me. |
| [ALJ to Plaintiff]: | What's the matter? |
| [Plaintiff]: | I said that's news to me. |
| [ALJ to Plaintiff]: | These are hypotheticals. |
| [Plaintiff]: | Oh.  Okay. |
| [ALJ to VE]: | I'm going to give you a wide range of hypotheticals. |
| [Plaintiff]: | Oh.  Okay. |
| [ALJ to VE]: | And the sitting would be about 45 minutes at a time for about six hours in an eight[-]hour |

---

[42] *See* Tr. 22.

day.  The person would not need a sit stand
option.  They could pretty much do that.[43]

Based on that exchange, the court has determined that the ALJ's indication about the

sit/stand option was nothing more than a misstatement.  Further, the court has determined that

said misstatement was overcome by the ALJ's provision of the specific standing/walking and

sitting limits in his hypothetical.  In sum, and reading the transcript as a whole, the court

concludes that it is reasonable to assume that the VE understood that the hypothetical required a

sit/stand option.  Accordingly, the court concludes that Plaintiff's argument on this point also

fails.

Third, Plaintiff argues that the above-referenced RFC limitations concerning Plaintiff's

ability to sit and stand/walk during an eight-hour workday conflict with SSR 83-10 and SSR 83-

12.  Although it is not explicitly stated, Plaintiff appears to be arguing that this conflict imposed

an obligation upon the ALJ under SSR 00-4p to ask the VE about potential conflicts between the

VE's testimony and the DOT.  After setting forth the selected principles from SSR 83-10 and

SSR 83-12, however, Plaintiff simply concludes, without any analysis, that "[t]he frequency with

which [Plaintiff] must change postural positions would clearly prevent her from being able to

perform the sedentary jobs identified by the [VE]."[44]

---

[43]  Tr. 792-93.

[44]  Docket no. 11.

Plaintiff has not adequately articulated how those two SSRs mandate the above-referenced conclusion.  Further, based upon the court's review of those two SSRs, it appears that Plaintiff may have overstated the effect of their language.

Plaintiff asserts that under SSR 83-10, sedentary work requires the ability to sit or stand for at least six hours in an eight-hour workday.  *See* SSR 83-10.  In the court's view, however, Plaintiff has overstated the effect of that language by calling it a requirement.  Based on the court's review of SSR 83-10, the language that Plaintiff refers to is contained in a glossary of terms, which SSR 83-10 states "may be used by decisionmakers to determine if an individual has the ability to perform the full range of sedentary, light, ore medium work from an exertional standpoint."  *Id*.  Moreover, Plaintiff has failed to address the fact that the ALJ's RFC specifically states that Plaintiff can sit for up to, but not more than, six hours in an eight-hour workday.

Plaintiff also asserts that SSR 83-12 stands for the proposition that an individual who must alternate between sitting and standing "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work."  SSR 83-12.  Plaintiff again overstates the effect of that language by quoting it selectively and out of context.  Following the portion quoted by Plaintiff, SSR 83-12 goes on to state that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base."  *Id*.  Although Plaintiff has not attempted to demonstrate that she suffers from an "unusual limitation of ability to sit or stand," even if the court assumes that to be the

case, the ALJ did exactly what was required by SSR 83-13 by consulting the VE on the implications of Plaintiff's limitations for the occupational base. *See id.* (stating that, as used in SSR 83-13, "the term vocational specialist . . . describes all vocational resource personnel").

For these reasons, Plaintiff's argument concerning any possible conflicts created by SSR 83-10 and 83-12 fails.

Finally, Plaintiff makes the general argument the ALJ's failure to ask the VE about any of the foregoing "conflicts" is a violation of SSR 00-4p that constitutes reversible error. In response, the Commissioner argues that while the ALJ did not specifically ask the VE if her testimony conflicted with the DOT, that represented nothing more than harmless error because no such conflicts exist in this case.

As the Commissioner admits, it is clear in this case that the ALJ did not specifically ask the VE about conflicts between her testimony and the DOT. In addressing Plaintiff's other arguments concerning SSR 00-4p, however, the court has already concluded that there were not any apparent conflicts between the VE's testimony and the DOT. Because there were no apparent conflicts, the court concludes that the ALJ's failure to ask about such conflicts constitutes harmless and nonreversible error.

## **CONCLUSION**

In summary, the court concludes:

1.      Plaintiff was adequately advised of her right to counsel and knowingly and intelligently waived that right. The ALJ did not err by proceeding with the hearing.

2.      The ALJ did not err in his development of the record concerning Plaintiff's

mental impairments.

3.      The ALJ did not err with respect to his determination about Plaintiff's credibility.

4.      The ALJ did not err in assessing Plaintiff's RFC.

5.      The ALJ did not err with respect to SSR 00-4p.

### ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's

decision in this case is **AFFIRMED** in all respects.

**IT IS SO ORDERED**.

DATED this 26th day of March, 2008.

BY THE COURT:

_____

PAUL M. WARNER
United States Magistrate Judge

22